FREDERICK H. TEMPLE, administrator, *vs.* HENRY W. RUSSELL & others.

Middlesex.    October 24, 1924. — February 24, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Devise and Legacy*, Construction, Estate in fee or for life.    *Trust*, Precatory.

A testatrix, without professional assistance and in a holographic will, devised to one "for long years . . . our constant and devoted friend, in recognition of such faithful devotion," a certain parcel of real estate "together with all goods, chattels, and personal property about my

home, to hold and dispose of as he desires or deems best. Also the sum of $2,000, now in" a certain savings bank; and in the same paragraph continued: "It is also my will and wish, that at the death of the said" designated friend "or at any time he may so arrange, the above mentioned property may be given to" a certain charitable corporation. She named the friend executor. At the death of the testatrix, the friend was old, feeble, and unable by reason of health to act as executor and unable to occupy the real estate in question, and died within five months of the testatrix. The real estate having been sold by consent of the parties interested, the administrator with the will annexed sought instructions of the Probate Court as to the interest of the friend and of the charitable corporation under the will in the funds and in the savings bank account. *Held,* that

(1) The intent of the testatrix must be sought from the will;

(2) The clear intent of the testatrix so gathered was that both the friend and the charitable corporation should share in her benefaction and that this was to be accomplished with the same property;

(3) Such intent was given effect by holding that the gift to the friend, whatever its nature, was subject to a precatory trust in favor of the corporation;

(4) A decree of the Probate Court, that the estate of the deceased friend had no interest in the proceeds of the sale of the real estate or in the savings bank account, and that the charitable corporation was entitled to the entire proceeds of the sale of the real estate and interest, and to the savings bank account to the extent of $2,000 with interest, was affirmed.

PETITION, filed in the Probate Court for the county of Middlesex on September 7, 1923, by the administrator with the will annexed of the estate of Emeline M. Evans, late of Medford, for instructions (1) whether any of the property devised and bequeathed to Austin E. Russell in the paragraph of the will denominated "First" and quoted in the opinion was subject to any trust and, if so, the nature of such trust; (2) what title Austin E. Russell had in the property, number 20 Brooks Park in Medford, and its contents and also in the account in the Medford Savings Bank; (3) whether the Massachusetts Society for the Prevention of Cruelty to Animals had any estate or interest, legal or equitable, in any of the property; (4) whether the bequest of " the sum of $2,000, now in the Medford Savings Bank" included any excess on deposit above the amount of $2,000.

The facts were agreed upon. Material facts are described in the opinion. The petition was heard by *L. E. Chamberlin,* J., by whose order a decree was entered as follows:

"1. That the property devised in item first of the will is not subject to any trust.

"2. That the estate of Austin E. Russell has no interest in the property No. 20 Brooks Park, Medford, nor in the proceeds of the sale thereof, nor in the account in the Medford Savings Bank.

"3. That the Massachusetts Society for the Prevention of Cruelty to Animals is entitled to the proceeds realized from the said sale of the property No. 20 Brooks Park, with accrued interest, also the deposit in the Medford Savings Bank to the extent of the bequest of $2,000. The bequest of $2,000 is specific and is to be treated as the real estate and passes as indicated to the said Society.

"4. That the bequest of $2,000 in the Medford Savings Bank carries with it the accrued interest from the death of the testatrix, February 17, 1923.

"5. That any sum of money on deposit in the Medford Savings Bank, less the accrued interest on the said $2,000 is due and payable, under the provisions of the will to Harriet F. Wemyss and Frederick H. Temple, each one-half."

Henry W. Russell, an heir at law of Austin E. Russell, appealed from a part of the decree, as described in the opinion.

The case was argued at the bar in October, 1924, before *Rugg,* C.J., *Braley, Crosby, Pierce, & Sanderson,* JJ., and afterward was submitted on briefs to all the Justices.

*H. R. Brentlinger,* stated the case.

*G. R. Warfield,* for Russell.

*A. E. Pillsbury,* for Massachusetts Society for the Prevention of Cruelty to Animals.

RUGG, C.J.　This is a petition by the administrator with the will annexed of the estate of Emeline M. Evans, for instructions as to the disposition of the proceeds of sale of certain real estate and of a savings bank deposit which his testatrix, without professional assistance, in a holographic will devised and bequeathed as follows: "First: — To Austin E. Russell, of said Medford, Massachusetts, who for long years has been our constant and devoted friend, in recognition of such faithful devotion, I give, devise and bequeath

my estate, at No. 20 Brooks Park, in said Medford, Massachusetts, together with all goods, chattels, and personal property about my home, to hold and dispose of as he desires or deems best. Also the sum of $2000, now in the Medford Savings Bank. It is also my will and wish, that at the death of the said Austin E. Russell, or at any time he may so arrange, the above mentioned property may be given to the 'Society for the Prevention of Cruelty to Animals,' in Boston." The testatrix died February 17, 1923, and the will was admitted to probate on April 11, 1923.

Austin E. Russell, the devisee and legatee named in the will, was unmarried, aged and feeble; he owned property amounting to about $9,000 and had a weekly pension of $15; he had long lived in the Medford house at No. 20 Brooks Park as one of the household of the testatrix. For many years he had been her constant and devoted friend. At the death of the testatrix he was unable by reason of his health to act as executor or to remain in the Medford house. He went to live with a sister and thence to a private hospital, where he died June 28, 1923, never having used or needed for his comfortable maintenance any part of the property mentioned in the first item of Mrs. Evans's will, or its income, except the proceeds of the furniture of the house, in which all other parties had waived any interest in his favor. The house was sold for $5,000 with the assent of all parties in interest, and under agreement that all rights should remain unaffected and as though the estate had not been converted into personalty. At the date of Mrs. Evans's will, in February, 1920, the amount of her deposit in the Medford Savings Bank was $1,671.56, with one semiannual interest dividend accrued in November, 1919, but not credited on the book. By subsequent deposits and accrual of interest, less withdrawals of $200 on November 19, 1920, and $50 on September 29, 1922, the amount of deposit at the time of her death was $3,416.82. All these facts preceding her death were known to Mrs. Evans.

Henry W. Russell, an heir at law of Austin E. Russell, appeals from the decree of the Probate Court for the county of Middlesex, whereby the petitioner was instructed "that

the estate of Austin E. Russell has no interest in the property No. 20 Brooks Park, Medford, nor in the proceeds of the sale thereof, nor in the account in the Medford Savings Bank; that said Society [Massachusetts Society for the Prevention of Cruelty to Animals, in Boston] is entitled to the proceeds realized from said sale of said property No. 20 Brooks Park, with accrued interest; also deposit in said bank to extent of the bequest of $2,000. The bequest of $2,000 is specific and is to be treated as the real estate and passes as indicated to the said society; that said bequest of $2,000 carries with it accrued interest from testatrix's death February 17, 1923, and that any sum of money on deposit in said bank less accrued interest on said $2,000 is due and payable under provisions of said will to Harriet F. Wemyss and said Temple each one half." None of the respondents other than Henry W. Russell appealed from the decree of the Probate Court; it consequently stands as to them. The appellant and the respondent Massachusetts Society for the Prevention of Cruelty to Animals concede that the bequest of $2,000 on deposit in the Medford Savings Bank is specific; that it carries with it any accretions from the death of the testatrix until paid; and that the difference between said $2000 plus accretions and the total sum of money on deposit in the Medford Savings Bank in the name of Mrs. Evans is due and payable to Harriet F. Wemyss and Frederick H. Temple.

The question for decision is whether Austin E. Russell under the will took an absolute and unqualified estate of inheritance in the property devised, which vested in his heirs upon his death intestate. The pertinent principles touching the interpretation of wills have been stated fully in opinions of this court and need not be rephrased. It was said in *Ware* v. *Minot*, 202 Mass. 512, 516: "The rule for the construction of wills followed by courts in recent times is to ascertain the intent of the testator from the whole instrument, attributing due weight to all its language, and then give effect to that intent unless prevented by some positive rule of law, rather than to try to make the interpretation of particular words or phrases in one instrument square with that before given to somewhat similar words used by some

one else under other surroundings to accomplish a more or less different end. *McCurdy* v. *McCallum*, 186 Mass. 464. A few combinations of words have become so fixed in their meaning by long and unvarying use as to be rules of property. But ordinary canons for the interpretation of wills, having been established only as aids for determining testamentary intent, are to be followed only so far as they accomplish that purpose, and not when the result would be to defeat it. *Crapo* v. *Price*, 190 Mass. 317, 319. *Jewett* v. *Jewett*, 200 Mass. 310, 317. It is permissible also to look at all the material circumstances in the light of which the will was executed in order to comprehend the sense and purpose of the language employed." It also was said by Chief Justice Gray in *Metcalf* v. *First Parish in Framingham*, 128 Mass. 370, 374: "The decision of this question doubtless depends upon the intention of the testator, as manifested by the words that he has used, and an omission to express his intention cannot be supplied by conjecture. But if a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court must supply the defect by implication, and so mould the language of the testator as to carry into effect, as far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared." These words were quoted and given a strong application in *Young Women's Christian Home* v. *French*, 187 U. S. 401, 412. To the same effect among other of our decisions are *Polsey* v. *Newton*, 199 Mass. 450, *Sanger* v. *Bourke*, 209 Mass. 481, 486, *Tibbetts* v. *Tomkinson*, 217 Mass. 244, *Eustace* v. *Dickey*, 240 Mass. 55, 73.

A reading of the will makes it plain that the testatrix had two dominant purposes in writing her first clause, one to help Mr. Russell, and the other to help the "'Society for the Prevention of Cruelty to Animals' in Boston." Both of these purposes were to be accomplished with the same property. They both are grouped under one clause. There are no technical words of inheritance in expressing her benefaction to Mr. Russell. Standing alone, those words would be adequate to pass an absolute ownership. If they are given that

meaning, there is no room for the operation of the last sentence of that clause respecting the Society. The collocation and form of the three sentences composing that clause indicate a design on the part of the writer that both purposes should be given effect. After providing for Mr. Russell, she begins the next sentence by saying, "It is also my will." These words imply the thought that the two provisions, so far as concerns testamentary purpose, stand on an equally firm foundation. The clear intent to be gathered from all the words used in the clause is that both Mr. Russell and the Society should share in her benefaction. To construe the first sentence of the clause as creating an estate in fee simple would nullify the last sentence. The will would stand as if that sentence had never been written. Such a construction would violate to that extent the general principle of interpretation that all testamentary words are to be given effect so far as compatible with fixed rules of law. It is apparent, from a reading of the clause as a whole, that the testatrix would have been shocked to have been told, as she laid down her pen after writing that clause, that she had given everything to Mr. Russell absolutely if he survived her, and had given nothing to the Society. There is no rule of law which requires doing violence to the fixed resolution of the testatrix as disclosed to the mind, unskilled in legal niceties of technical construction, by the words of the will. That plain testamentary purpose can be given effect, in the opinion of a majority of the court, by holding that the gift to Mr. Russell, whatever its nature, was subject to a precatory trust in favor of the Society. The words, "It is also my will" are more than a mere entreaty or expression of desire. They are words of command. They express an imperative testamentary design. *Hess* v. *Singler*, 114 Mass. 56, 59. They are not cut down, in view of the entire first clause, by the addition of the words, "and wish." This result is not in contravention to the recent tendency to narrow the application of the principle as to precatory trusts and is in harmony with our decisions, most of which are reviewed in *Poor* v. *Bradbury*, 196 Mass. 207. *Dexter* v. *Young*, 234 Mass. 588, 591.

The case at bar is distinguishable from cases like *Bassett* v. *Nickerson*, 184 Mass. 169, *Lovering* v. *Balch*, 210 Mass. 105, and *Knibbs* v. *Knibbs*, 236 Mass. 182.

Costs as between solicitor and client may be awarded out of the fund in the discretion of the Probate Court.

*Decree affirmed.*